Matthew M. Levy, J.
The moving papers assert the following : The plaintiff is a limited partner in the defendant Motors Building Realty Company, hereinafter called Motors. Motors is a limited partnership consisting of 3 general and 850 limited partners. It was organized in August, 1957 and has a capital of $6,000,000, of which sum $5,780,000 represents cash paid for limited partnership interests sold to the general public. The plaintiff’s investment as a limited partner amounted to the sum of $50,000. The general partners are the defendants Louis J. Glickman, Joseph F. Stein and Melvin Stein, who, it is asserted, neither advanced nor invested any moneys in the venture in their capacity as general partners. In October, 1958, as planned, Motors acquired from the general partners a leasehold upon the premises known as the General Motors Building located in New York City. The cost to Motors was $9,500,000, of which $9,375,000 was cash. This cash sum was obtained by a mortgage loan of $3,500,000, and $5,875,000 through the sale of limited participation interests. Of this total cash sum, $8,000,000 was paid to the third-party sellers of the leasehold, and $1,375,000 was paid to Glickman Corporation (the State of incorporation is not given) to cover expenses and some capital improvements, with a substantial part remaining as a profit to Glickman Corporation. In their prospectus seeking to induce the general public to purchase limited partnership interests, the defendants represented that the leasehold was being pur *723 chased for long-term investment. Nevertheless, in January, 1959 the defendant Louis J. Glickman, through the defendant Glickman Corporation (Delaware), of which corporation he is the sole stockholder, entered into an agreement with Motors to buy the leasehold for $9,900,000. The plaintiff alleges further that it was agreed between and among the defendants that the building would be sublet to Glickman Corporation (Nevada), of which the defendant Glickman is also the sole stockholder.
Suing in behalf of herself and of all other limited partners of Motors, the plaintiff instituted this action to have the contracts of sale and resale of the leasehold cancelled and to enjoin forever any sale of the leasehold to any corporation owned and controlled by the defendant Louis J. Glickman. The plaintiff charges that the sale as proposed is a fraud upon the limited partners in that it was falsely represented to them that the General Motors Building was to be retained by Motors for investment purposes and not disposed of, in that the price provided for in the sale of Motors’ assets to the Glickman Corporation (Delaware) is much less than the true value of the leasehold, and in that the defendants Louis J. Glickman and his associates have been seeking to manipulate the transaction as part of a vast program wherein he stood to make a profit of $3,000,000. The plaintiff asserts that the sale at a grossly inadequate price and the intended resale at a large and substantial profit to the said individual defendants, with resultant loss and detriment to the plaintiff and the other limited partners, were contrary to the obligations of the general partners faithfully and diligently to administer the affairs of the partnership.
This action was commenced on March 12, 1959. A notice of pendency of the action, together with the original verified complaint, was filed in the New York County Clerk’s office on March 9, 1959. On April 3, 1959 the defendants obtained from the court an order vacating the Us pendens, upon the filing of an undertaking in the sum of $25,000. Thereafter, the proposed sale of the Motors leasehold to Glickman Corporation (Delaware) was abandoned and the entire transaction was dropped.
The plaintiff now moves before me for an order (1) granting the plaintiff leave to terminate this action; (2) determining that the attorney for the plaintiff is entitled to a reasonable compensation for his services rendered to the plaintiff and that the plaintiff is entitled to be reimbursed for her disbursements and expenses in this action—which payments are to be made by the general partners and the Glickman corporations; (3) referring the matter to an Official Referee to ascertain the *724 ■ expenses incurred by the plaintiff and to determine the fair and reasonable fee to be allowed the plaintiff’s attorney; and (4) granting to the plaintiff appropriate other and further relief.
The first part of the relief sought in this action — to set aside the proposed sale and resale—has, in the light of the conceded abandonment of the transactions attacked, become moot. And the plaintiff does not desire to proceed with the action in respect of the remaining demand sued for — to enjoin permanently any sale of the Motors assets to Grlickman or any of his companies. As to discontinuance, the defendants do not object (Rules Civ. Prac., rule 301). The only question on that score is whether notice of the plaintiff’s application for leave to discontinue must or should be given to others than the defendants.
The plaintiff has sued, as I have said, in behalf of herself and in behalf of other limited partners of Motors Building Realty Company, a'limited partnership, and the complaint states that the action is brought in behalf of the plaintiff and “ in behalf of all other holders of interests in the leasehold owned by said limited partnership, who are too numerous to bring before the court ”. I hold that, at the present stage of the proceedings, notice of the application for leave to discontinue need not be given to all the limited partners. Where one institutes an action in his own behalf and in behalf of other persons similarly situated, he may discontinue the suit until such time as a person similarly situated becomes a party plaintiff (Hirshfeld v. Fitzgerald, 157 N. Y. 166,183-184). No additional party plaintiffs have appeared in this action, and the plaintiff’s application for leave to discontinue is granted. Such a termination of the action will not be on the merits and will have decided nothing as far as the basic issues are concerned.
The principal problem here, of course, is not whether the plaintiff should be permitted by the court to discontinue this action, but whether the defendants — and particularly the defendants Grlickman and Stein and the Grlickman corporations — should be required to meet the plaintiff’s expenses incurred by virtue of the commencement and prosecution of the action.
The plaintiff asks that the fees be paid by the general partners (the three individual defendants) and the Grlickman corporate defendants because, it is asserted by the plaintiff, it was these defendants who made it necessary to institute this action and incur the expenses. There is no authority for the granting of the plaintiff’s precise request. It is axiomatic that “ fees which one is obligated to pay to his attorney are not recoverable from an adverse litigant — absent any agreement for such *725 payment or a statutory provision therefor ’ ’ (Matter of Muck, 125 N. Y. S. 2d 415, 419). There is no claim here of contract or of legislation insofar as the application for payment is directed to these specifically named defendants.
But what of the remaining defendant, the limited partnership, Motors Building Realty Company, for whose benefit the plaintiff asserts she instituted the suit? For the moment, I shall assume that the plaintiff is properly in court as the true representative of her class, suing in the right and in behalf of the limited partnership, and that, while Motors is named as a defendant in this action, it is in fact only nominally an adverse party—as claimed by the plaintiff. In such a suit, if Motors were a corporation, and if there were “ successful prosecution ” of the action, the ‘1 reasonable expenses, including attorneys ’ fees [of the plaintiff] * * * [might] be assessed upon the corporation in such amount as [the] court shall determine ”. (General Corporation Law, former § 61-a, repealed by L. 1945, ch. 869, § 2; see 1945 Report of N. Y. Law Rev. Comm., Recommendations and Studies, p. 134, n.)
While there is no question but that the precepts of the law of corporations do not per se apply to the case at bar, since Motors is not a corporate personality, power of the court to direct that a limited partnership pay a limited partner’s counsel fees and disbursements in a representative and derivative suit brought by him may, it seems to me, be properly gleaned from an appropriate consideration, amalgam and application of relevant equitable principles, of the common law as declared in former section 61-a of the General Corporation Law, and of the language of the opinion in Rusicka v. Rager (305 N. Y. 191) where the Court of Appeals said, at pages 197-198: “It is to be remembered that we are here concerned with a limited partnership. There is good reason for regarding such a partnership as a distinct entity for the purposes of pleading. Limited partnerships were unknown to the common law and, like corporations, are ‘ creature [s] of statute ’ (Lanier v. Bowdoin, 282 N. Y. 32, 38). Statutes permitting limited partnerships are intended to encourage investment in business enterprise by affording to a limited partner a position analogous to that of a corporate shareholder” (emphasis in original).
Ordinarily, under the well-settled law of this State, an attorney may not recover legal fees from persons other than his client, merely because such persons were benefited by his services (Matter of Loomis, 273 N. Y. 76, 81-82). There are, however, some exceptions which may be deemed pertinent. One is that *726 of a class or representative action brought on behalf of all members of a class for whose benefit the plaintiff may properly sue. Another is where the plaintiff, through his lawsuit, has obtained a decree which creates a fund in which others may share or where he has rendered services in connection with such a fund which benefit other persons interested therein (House v. Amsdell Brewing & Malting Co., 133 App. Div. 486, 489).
Under section 195 of the Civil Practice Act, one or more persons may prosecute a class suit “ [w]here the question is one of a common or general interest of many persons or where the persons who might be made parties are very numerous and it may be impracticable to bring them all before the court ’ ’. And, where the result of a class action is to bring property or money into court, or to preserve property for the substantial benefit of the class represented, the court may allow counsel’s fee to the successful party either from the specific fund or res, or by proportionate contributions from the class of persons benefited (Woodruff v. New York, Lake Erie & Western R. R. Co,, 129 N. Y. 27, 37). Indeed, the fact that the action is discontinued before final judgment because the issue becomes moot does not automatically foreclose favorable consideration of an application for counsel fees and expenses (Martin Foundation v. Phillips-Jones Corp., 280 App. Div. 981; see 283 App. Div. 729, 731, affd. 306 N. Y. 972). And the fact that no fund has been brought into court as a result of the litigation “ does not of itself deprive the court of the right to inquire into the fairness of the application ” to grant costs and expenses including counsel fees, and to make an award thereof “ if the justice of the situation so demands ” (Allen v. Chase Nat. Bank, 180 Misc. 259, 265; see Sprague v. Ticonic Nat. Bank, 307 U. S. 161).
I am of the opinion, therefore, as I have indicated, that, viewing the main aspects of the present application, equitable power resides in the court to make the award requested in an appropriate case, However, upon the facts presented on this submission, I do not find that this is such a case, notwithstanding that I hold, as I do, that the individual defendants owed to their partners—limited though they be — a responsibility of sensitive fiduciary quality within the epic pronouncement of Meinhard v. Salmon (249 N. Y. 458, 463-464).
One bringing a class action ‘ ‘ must show himself to be a fair representative of the class he presumes to involve in litigation by showing his interest, motive and financial concern are those at least of the majority of the class he presumes to represent. If his interest is slight and the interests of the others great, he may not maintain such representative action ” (Sutton Car *727 pet Cleaners v. Fireman's Ins. Co. of Newark, N. J., 68 N. Y. S. 2d 218, 224, affd. 273 App. Div. 944, affd. 299 N. Y. 646; cf. Salmon v. Feinstein, 25 Misc 2d 963, 965-966).
The personal rights of the plaintiff against those who "may have breached their duty under the laws of contract or of partnership or of torts are not in any way denigrated when I say that, in the circumstances of this case, it is obvious to me that the present suit cannot truly be considered a class or representative action so as to warrant the imposition of the expense of the litigation upon the defendant Motors, and thus indirectly upon the great number of nonlitigating limited partners. The defendants assert that they had the written consent of at least 80% of the limited partnership, having full notice of the contemplated transaction. While this is denied, it is plain that the plaintiff is the sole litigating objector out of 850 limited partners, and it is not denied that she is an investor of but $50,000, which is less than a 1% participating interest in the principal amount of the limited capital of the partnership, $5,780,000.*
Moreover, to the allegations set forth in the complaint that the limited partners were defrauded, that the sales price fixed for the leasehold was too low and that the G-lickman defendants on resale would realize a large profit, an answer was filed denying the material allegations. The burden, without doubt, being upon the plaintiff, she was obligated to present some proof-—or at least the nature thereof—that the limited partners as a class had been the victims of fraud, as charged, or that the purchase price was inadequate, as alleged, or that the individual defendants were to make a substantial profit on the transaction, as claimed. This was particularly necessary in view of the defendants’ denial of misrepresentation, their evidence that the valuation was a fair one, determined by a reputable real estate appraiser, and their further proof of what was to be done with the leasehold if a new corporation were to be formed and the planned financial arrangements could be made. To the assertions of the plaintiff that the banking firms withdrew from the underwriting related to the project, when they learned of her action, and that as a result thereof the whole plan collapsed, the defendants have interposed denials and counterassert that the abandonment of the proposed sale of the leasehold was *728 caused not by the plaintiff’s lawsuit, but by the failure of the G-lickman companies to complete the purchase, which, by the terms of the agreement, was contingent upon the successful raising of a specified fund by public financing. It appears from the documents presented to me that the purchaser of the leasehold was given an option, under the contract, to terminate it unless the plan to finance the transaction by a public offering of securities was accomplished. This was not achieved. That the contract to purchase was not consummated does not in itself show that it was the suit by the plaintiff that caused the abandonment.
The plaintiff suggests that some of the proof needed to support her application for an allowance for counsel fees would be forthcoming were I to direct a, reference to ascertain the facts — and that her present papers should be considered in the nature of a complaint, to which there has been a denial, and that she should have a hearing for the presentation of proof. I do not agree that a reference is in order in a situation where the plaintiff has made merely general allegations and, in response, the defendants have come forward with detailed denials and specific evidence. In the light of the defect in the plaintiff’s status as a claimed representative in this purported class action, it would be unjust to put the defendants to the further expense of defending their position in opposition to this application to be charged with an allowance of fees for the plaintiff’s counsel.
After full consideration of all of the facts presented to me, the motion for termination of the action is granted, and the motion in all other respects is denied. No costs are awarded to any party.

 It is relevant to note here that, in a ease where the subject company is a corporation, the suing stockholders must—-in order to- avoid a direction to give security for the defendant’s costs and expenses — own in excess of $50,000 of the corporate shares of the class involved (taken at market value) or more than 5% of such shares. (General Corporation Law, § 61-b.)