LITTON INDUSTRIES CREDIT CORPORATION *v.*
NICHOLAS T. CATANUTO

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued December 13, 1977—decision released May 2, 1978

*Charles G. Albom,* with whom, on the brief, was *Sidney Gimple,* for the appellant (defendant).

*S. Robert Jelley,* with whom was *James P. Breen, Jr.,* for the appellee (plaintiff).

LOISELLE, J. On February 25, 1970, Litton Medical Products, Inc. (hereinafter Litton Medical) entered into a written agreement to lease to the defendant, a practicing physician, x-ray equipment for a term of five years to commence on March 6, 1970. Under the terms of the lease, the defendant was to pay a monthly rental of $195.02, an amount totaling $11,701.20 for the sixty-month period. Paragraph 15 of the agreement provides that in the event of default the "Lessor shall have the right to exercise any one or more of the following remedies: (A) to declare the entire amount of unpaid total rent for the balance of the term of this Lease due and payable, whereupon the same shall become immediately due and payable; (B) without demand or legal process, to enter into premises where Equipment may be found and take possession of and remove the same, whereupon all rights of Lessee in Equipment shall terminate absolutely, and retain Equipment and all prior payments of rent made hereunder, it being agreed that the amounts to be retained by Lessor under this sub-section (B) shall not be as a penalty but as liquidated damages for the breach hereof and as reasonable return for the use of Equipment and for the depreciation thereof; (C) to recover the balance of all amounts due hereunder; (D) to pursue any other remedy available

to Lessor at law or in equity. The remedies provided under (B) and (C) may be exercised only in the alternative." Additionally, paragraph 18 specifies that "Should Lessee fail to pay duly and promptly any part of the rent herein reserved or any other sum required to be paid by Lessee to Lessor hereunder, Lessee shall pay Lessor interest on such delinquent payment at the rate of 6% per annum from the date when such payment was due until paid and expenses of collection, including reasonable attorney's fees."

During the term of the lease, the defendant ceased making his monthly rental payments and the plaintiff accelerated payment of the unpaid balance in accordance with the default provision contained in the agreement. In May, 1973, the plaintiff, assignee of Litton Medical's right, title and interest in the agreement, brought suit to recover all sums due and payable under the terms of the lease, including interest on the amount due and attorneys' fees. Nearly two years later, in February, 1975, the x-ray equipment was removed from the defendant's office and leased by the plaintiff to another physician. Subsequently, the plaintiff credited the defendant's account with the amount received from this lease minus deductions for the cost expended in re-leasing and relocating the equipment.

Following a trial to the court, judgment was rendered against the defendant in the amount of $8237.37. Of this amount, $3855.93 constituted the net unpaid balance, $1456.44 represented interest on the amount due, and $2925 was allocated as attorneys' fees. From this judgment, the defendant has appealed to this court.

The defendant first claims error in the court's conclusion that the plaintiff, by accelerating the amount due under the lease, instituting a suit for damages, and only then repossessing and re-leasing the equipment, did not invoke both clauses 15 (B) and 15 (C) of the lease agreement. It is the defendant's argument that because the default provision specifically states that the remedy provided for under 15 (B), that of repossession, and the remedy provided for under 15 (C), that of recovering the balance of all payments due under the lease, are to be "exercised only in the alternative," the plaintiff's action in repossessing the equipment bars a claim for monetary damages. The plaintiff, on the other hand, argues that by accelerating the amount due and then seeking recovery under 15 (C) it was obligated to mitigate damages, a duty adhered to by repossessing and re-leasing the x-ray equipment. The plaintiff concedes that had it first repossessed the equipment, it could not then, pursuant to the terms of the lease, seek damages. However, since suit was initiated prior to the repossession, the plaintiff reasons, the repossession did not constitute a remedy, as defined in 15 (B), but rather constituted an act of mitigation in compliance with the established requirements of contract law.

Both parties agree, then, that 15 (B) and 15 (C) specify alternative remedies, only one of which may be invoked upon the lessee's default. It is clear that by accelerating the amount due under the agreement, the plaintiff initially invoked both 15 (A), the acceleration clause, and 15 (C), the clause allowing for recovery of the full amount then due. The fact that the plaintiff initially elected one remedy does not foreclose him from electing another, at least as long as the party against whom

the election is sought has not relied upon the initial choice to his detriment. Corbin, Contracts (Rev. Ed.) §§ 1218, 1220; see also *Garlock* v. *Friedman,* 282 App. Div. 729, 122 N.Y.S.2d 406. This is true even where a suit is brought under the theory of the initial election. See, e.g., *People* v. *Texaco, Inc.,* 82 Misc. 2d 698, 369 N.Y.S.2d 952; *Riviera Congress Associates* v. *Yassky,* 48 Misc. 2d 282, 264 N.Y.S.2d 624, modified, 25 App. Div. 2d 291, 268 N.Y.S.2d 854, aff'd, 18 N.Y.2d 540, 223 N.E.2d 876; see also Corbin, op. cit. § 1218. These principles, applicable to remedies derived from traditional contract law, are equally applicable to remedies reserved under the terms of a contract. Corbin, op. cit. § 1227.

The question narrows down, then, to the nature of the plaintiff's act of repossessing the equipment. If the repossession constitutes a remedy within the meaning of 15 (B), the plaintiff is entitled to no further damages, for as the clause specifies, the repossession terminates all rights of the lessee in the equipment, and those rental payments already made are to be retained by the lessor (or its assignee) as liquidated damages for the breach of the agreement. If, however, the repossession is determined to constitute fulfillment of the plaintiff's duty to mitigate its damages, then 15 (B) does not preclude the plaintiff's recovery.

In support of its claim that the repossession constituted an effort to mitigate its damages, the plaintiff points to numerous New York cases[1] reiterating

[1] The lease agreement includes a provision designating New York law as that governing the lease. In reliance upon this clause, as well as upon a stipulation entered into by the parties agreeing to the applicability of New York law, the trial court used the law of that state. Although we have some doubts as to the propriety of

the established rule that a party injured by another's default is under a duty to make a reasonable effort to minimize the damages liable to result from that injury. See, e.g., *Losei Realty Corporation* v. *City of New York,* 254 N.Y. 41, 47–48, 171 N.E. 899. The plaintiff's reliance on those cases, however, is misplaced. In none of those cases was there a specific contractual provision attempting to preestablish damages in the event of a default. Although the contractual provision at issue in this case does not purport to be a liquidated damages clause, i.e., it does not specify an exact dollar amount recoverable in the event of the lessee's default, the acceleration clause, 15 (A), in conjunction with 15 (C), essentially specifies the amount of rent remaining under the contract as recoverable damages. New York courts, when confronted with such acceleration clauses, have consistently construed them to be either valid liquidated damage clauses; *In re Erlich Estates,* 147 Misc. 468, 265 N.Y.S. 324; or unenforceable attempts to impose a penalty. *In re Barnett,* 12 F.2d 73 (2d Cir.); *Fairfield Lease Corporation* v. *Marsi Dress Corporation,* 60 Misc. 2d 363, 303 N.Y.S.2d 179; see also 22 Am. Jur. 2d, Damages § 228; annot., "Liquidated Damages or Penalty," 104 A.L.R. 223.

The validity of the acceleration clause is not raised on this appeal. Consequently, we view it as a valid liquidated damage clause. Because "[t]he very purpose for which such provisions are sustained is to obviate the difficulties of [proof of

applying New York law in light of the fact that there appears to be no relationship at all between the contract at issue and our sister jurisdiction; see Restatement (Second) 2 Conflict of Laws § 332.2; we will adhere to the theory followed in the trial court. See Maltbie, Conn. App. Proc. § 42.

actual damage]," once such a provision is found to be valid, no proof of the true amount of injury is required. Corbin, Contracts (Rev. Ed.) § 1062. Rather, if an anticipated measure of damages is specified in the contract, the terms of the contract prevail over any measure of actual damages. The liquidated amount is not reduced or expanded by the actual damage suffered. See, e.g., *General Supply & Construction Co.* v. *Goelet,* 241 N.Y. 28, 37–38, 148 N.E. 778.

Because the acceleration clause, 15 (A), constituted a liquidated damage provision, the amount recoverable by the plaintiff was that measured in accordance with its terms. That amount prevailed over the actual damage resulting from the defendant's breach, as measured under traditional contract law with consideration given to the duty to mitigate. The plaintiff's repossession of the x-ray machine constituted a choice of the alternative remedy specified under 15 (B). This is so even though the plaintiff may actually have intended the repossession to serve in mitigation of actual damages. "The law simply does not . . . permit a party to exercise two alternative or inconsistent rights or remedies. Even though . . . [a party] expressly states that he intends to reserve a right, he will, nevertheless, lose it if he takes an inconsistent course." 5 Williston, Contracts (3d Ed.) § 684, p. 275.

Pursuant to the terms of the contract, the plaintiff, by repossessing the equipment, foreclosed its initial choice of remedies. Under the specific terms of the repossession clause, the lessee's interest in the equipment terminated and the plaintiff became entitled only to the rent already paid as a form

of liquidated damage. Because of our decision on this issue, we need not address the defendant's claim that the evidence does not support the trial court's award of damages.

The defendant's final claim challenges the reasonableness of the amount awarded in attorneys' fees. "A contract may provide for the payment of attorneys' fees by a defaulting party, but those fees are recoverable solely as a contract right and not as damages (13 N.Y. Jur., Damages, § 145; *Roe* v. *Smyth*, 278 N.Y. 364) [16 N.E.2d 366]." *Fairfield Lease Corporation* v. *Marsi Dress Corporation,* supra, 366. The lease agreement at issue in the present case provides that, in the event of default, the lessee is liable for "expenses of collection, including reasonable attorney's fees." As we have already determined, because the plaintiff chose to repossess the machine, it was entitled only to those liquidated damages specified in 15 (B) as "all prior payments of rent." Those attorneys' fees which the plaintiff now seeks to recover were incurred in an effort to collect additional damages to which it was not entitled under the terms of the contract. Under these circumstances, it cannot be said that the defendant is liable for such fees. As a New York court stated when confronted with a similar contractual provision, the party seeking an award of attorneys' fees must show "what, if any, legal expenses plaintiff had *necessarily incurred* by reason of the defendants' failure to pay . . . rentals when due." (Emphasis added). *Fairfield Lease Corporation* v. *Marsi Dress Corporation,* supra. The plaintiff's repossession of the machine and retention of rents already paid required no legal expense. The plaintiff is not, therefore, entitled to an award of attorneys' fees.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.